UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL THOMAS,<br><br>      Plaintiff,<br><br>v.<br><br>DAVID DAVEY, et.al.,<br><br>      Defendants. | Case No.: 1:19-cv-00333-SAB (PC)<br><br>SCREENING ORDER GRANTING PLAINTIFF LEAVE TO FILE AN AMENDED COMPLAINT OR NOTIFY THE COURT OF INTENT TO PROCEED ON CLAIMS FOUND TO BE COGNIZABLE<br><br>[ECF No. 1] |

Plaintiff Michael Thomas is appearing pro se in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Plaintiff's complaint, filed March 13, 2019.

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

///

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## COMPLAINT ALLEGATIONS

The Court accepts Plaintiff's allegations in the complaint and first amended complaint as true *only* for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

Plaintiff has herniated disks in his back at the L 4-5 and L5-51 levels which causes him to have periodic episodes of debilitating pain. When the symptoms occurred, Plaintiff typically would alert unit and/or medical staff, and they transported him to the clinic/emergency room via wheelchair and he was given an injection of Toradol to kill the pain.

On December 24, 2014, at 7:10 a.m., Plaintiff informed correctional officer Barron that he was having an episode and needed to go get the Toradol injection. Barron said he would inform the medical technician assistant (who Plaintiff later learned was a psych technician) McElhaney.

///
///
///

At 8:29 a.m., Defendant McElhaney arrived at Plaintiff's cell and Plaintiff informed him of his episode and that he would to go get an injection of Toradol. McElhaney told Plaintiff to submit a medical request slip. Plaintiff explained that in emergency situations such as the one in point, he never had to submit a medical slip, but McElhaney insisted. Plaintiff again explained that this was a routine process that had been done several times, that all unit and medical staff were familiar with it, and Plaintiff had never been required to submit a medical slip. McElhaney again insisted and refused to help Plaintiff. At that point, Plaintiff declared "man down" directly to McElhaney. Upon information and belief, "many down" is a medical distress call which places upon every staff member, custody and/or medical, the personal responsibility to immediately respond and render reasonable assistance to the complaining prisoner. Instead of assisting Plaintiff, McElhaney just said, "okay" and left.

At 10:15 a.m., Plaintiff declared "man down" to correctional officer Gomez while he was at Plaintiff's cell issuing canteen. Plaintiff's cellmate, Williams J24577, had to collect/receive Plaintiff's canteen because he could not move. Gomez said he would "check & see what's up." During this time, staff were conducting mandated "wellness check."

At 10:45 a.m., McElhaney stopped to issue Plaintiff his daily medications. Plaintiff again declared "man down." McElhaney said he'd already talked to medical staff and that the nurse and doctor had instructed him to ignore Plaintiff. Plaintiff requested McElhaney's name and title to which he stated, "Psych Tech Mac." Plaintiff requested the names of the nurse and doctor who told him to ignore Plaintiff. McElhaney responded, "LVN Thomas." However, he would not provide the name of the doctor. Plaintiff again stressed the severity of his medical emergency.

Correctional officer Rogue was escorting McElhaney. Rogue sarcastically said, "You didn't say nothing when we were passing out canteen"—the implication being that Plaintiff had not put canteen before his medical emergency, suggesting that it was not an emergency. Plaintiff informed Rogue that he did declare "man down," to Gomez during canteen. At this point, Plaintiff submitted a medical request slip to McElhaney dated December 24, 2014 with "EMERGENCY" clearly printed on the top.

///

3

At 12:37 p.m., a prisoner on the top tier began yelling "man down, cell 10," and McElhaney and Barron responded to Plaintiff's cell. McElhaney angrily admonished Plaintiff and asked if he was going to give him a chance to submit Plaintiff's medical request slip. Plaintiff explained that it had been over an hour since he had given him the slip. McElhaney told Plaintiff that he had not yet had time to submit the request. Correctional officer Barron told McElhaney that he had personally dealt with Plaintiff and the issue several times before and explained the normal process to McElhaney just as Plaintiff had. McElhaney again said that he was only the middleman but that he would submit the medical slip and return to tell Plaintiff what the nurse and doctor decided. McElhaney said the only way he himself could assist Plaintiff was if he were unconscious or bleeding.

McElhaney returned, said he had submitted Plaintiff's medical slip, and both the doctor and nurse were busy and would look at Plaintiff if they had time, but Plaintiff would most likely have to wait until Friday, December 26, 2014. As it was Christmas Eve in Corcoran, the temperature was bone-achingly cold. Defendants left Plaintiff in obvious pain, freezing, in tears, unable to eat, unable to defecate and unable to move for over two full days before providing any assistance whatsoever.

On December 25, 2014, every staff member who worked in Unit 4B4L personally witnessed Plaintiff in distress and they all passed by him without assistance.

On December 26, 2014, at 9:30 a.m., over fifty hours from the time Plaintiff first requested medical assistance, correctional officer Batocall arrived and transported Plaintiff to the clinic via wheelchair, which was extremely painful. During this time and during all such episodes, the slightest movement caused Plaintiff excruciating pain akin to powerful electrical shocks. The process of strip search, restraint application, hoisting Plaintiff into and out of the wheelchair and transporting him to the clinic or emergency room caused significant pain. Plaintiff has repeatedly requested that medical assistance, i.e., Toradol injections be administered at his cell or at least within his housing unit, to no avail.

///
///
///
///

At the clinic, Plaintiff was seen by licensed vocational nurse Holt. Upon learning that Plaintiff had been declaring "man down" since December 24, 2014 and was ignored, she asked "no one even came to check your vital signs?" Holt examined Plaintiff and referred him to the emergency room for the Toradol injection. Plaintiff was then transferred back to his cell via wheelchair to await the arrival of the emergency transport.

At 11:19 a.m., while back in his cell awaiting transport to the emergency room, McElhaney came to issue Plaintiff his daily medications. Plaintiff again requested the name of the Doctor who had instructed McElhaney to ignore him on December 24, 2014, but he would not provide the name.

At 11:34 a.m., staff arrived and transported Plaintiff to the emergency room via wheelchair. The emergency room Doctor examined Plaintiff's medical file, MRIs, conducted a physical examination, and determined that Plaintiff was in need of emergency surgery. Plaintiff was provided Morphine to numb the pain and immediately sent Plaintiff out to Mercy Hospital. Upon his arrival at Mercy Hospital, Plaintiff received numerous medications, including Morphine and Toradol.

On December 27, 2014, Plaintiff underwent a new MRI at Mercy Hospital, and Dr. Wiebe determined Plaintiff was in need of surgery which was scheduled for the next day, December 28, 2014.

On the morning of December 28, 2014, staff at Mercy Hospital prepared Plaintiff for surgery; however, the hospital cannot perform surgery without the approval of the Chief Medical Officer (CMO) of the prison. The CMO refused to authorize Plaintiff's surgery, stating that Plaintiff had lived with this medical condition for a long time and the mediation was effective. Therefore, Plaintiff's surgery was cancelled.

Over the next few days, Dr. Wiebe and the CMO were supposed to communicate as to whether the surgery would be authorized. However, after several days, without approval, it was determined that surgery would not be performed, and Plaintiff was discharged on January 1, 2015. Plaintiff was returned to his cell on January 2, 2015, at approximately 2:00 a.m. Later that day, Plaintiff was taken to the emergency room for follow-up care.

On January 20, 2015, Plaintiff filed an inmate appeal. In response, Defendants admitted to violating prison policy.

On February 19, 2015, Plaintiff was interviewed by senior registered nurse, T. Law, regarding the appeal. Defendant Law apologized for the pain and suffering and told Plaintiff that every medical staff member who saw his medical request slip had an obligation to assist Plaintiff. Plaintiff requested the name of all the medical staff members, but she did not provide them.

When Plaintiff was discharged from Mercy Hospital, he was prescribed Morphine, Gabapentin, Flexeril, Decadron, and a walker. However, Plaintiff was never issued a walker.

Doctors Ulit and Mays used several pretexts to deny Plaintiff his walker including, falsely insisting that his medical file contained no MRI reflecting the injury that would cause the pain. Each time, Plaintiff insisted that he was in need of a walker based on his MRI, Defendants Ulit and Mays would dismissively say that Plaintiff did not met the criteria for a walker and threatened to have him removed from the clinic and/or disciplined. Dr. Mays made a notation in Plaintiff's medical file that he had "manipulative behavior."

Plaintiff was eventually able to obtain a copy of his medical file, and on July 21, 2015, he filed an inmate appeal requesting issuance of a walker. Once confronted with the relevant documents, Dr. Ulit immediately issued a walker to Plaintiff.

### III.

### DISCUSSION

**A.  Supervisory Liability**

Plaintiff names David Davey, Warden at California State Prison, Corcoran, as a Defendant.

Under section 1983, Plaintiff must prove that the defendants holding supervisory positions personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). There is no respondeat superior liability, and each defendant is only liable for his or her own misconduct. Iqbal, at 1948-49. A supervisor may be held liable for the constitutional violations of his or her subordinates only if he or she "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

Plaintiff's complaint is devoid of any allegations supporting the existence of a supervisory liability claim against Warden Davey. The only basis for such a claim would be respondeat superior, which is precluded under section 1983. Accordingly, Plaintiff fails to state a cognizable claim against Defendant Warden Davey.

### B. Doe Defendants

Plaintiff names Doe 3 through 12, as medical and/or custody staff, who saw Plaintiff's medical request form on December 25, 2014. Plaintiff also names Does 13 through 22, as any medical staff who saw Plaintiff's request form or otherwise became aware of Plaintiff's request for assistance on December 24 or 25, 2015.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Crowley v. Nevada ex rel. Nevada Sec'y of State, 678 F.3d 730, 734 (9th Cir. 2012) (citing Graham v. Connor, 490 U.S. 386, 393-94 (1989)) (internal quotation marks omitted). To state a claim, Plaintiff must allege facts demonstrating the existence of a link, or causal connection, between each defendant's actions or omissions and a violation of his federal rights. Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011).

Plaintiff fails to allege any facts personally linking each of the Doe Defendants to the alleged violations. There are insufficient allegations that each of the Doe Defendants personally participated in the alleged events set forth in Plaintiff's complaint, and a Doe Defendant cannot be held liable simply upon his/her position. Plaintiff cannot proceed against the Doe Defendants unless he alleges how each was personally violated, or knowingly directed a violation of his constitutional rights.

### C. Deliberate Indifference to a Serious Medical Need

The Eighth Amendment's prohibition against cruel and unusual punishment protects convicted prisoners. Bell v. Wolfish, 441 U.S. 520, 535 (1979); Graham v. Connor, 490 U.S. 386, 395 n.10 (1989). Although prison conditions may be restrictive and harsh, prison officials have a duty to ensure

that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (quotation marks omitted).

To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. See, e.g., Farmer v. Brennan, 511 U.S. 825, 847 (1994); Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). In order to state a claim, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff. Farmer, 511 U.S. at 847; Frost, 152 F.3d at 1128.

Based on Plaintiff's allegations that nurse McElhaney submitted the medical request slip to the Defendant Doctor Doe No. 1 and licensed vocational nurse Thomas on December 24, 2014, and both told McElhaney to ignore Plaintiff, is sufficient to give rise to a cognizable claim for deliberate indifference under the Eighth Amendment. Plaintiff's allegations are also sufficient to give rise to a cognizable claim for deliberate indifference against Defendant CMO Doe No. 2 (who denied authorization for the surgery on or about December 28, 2014) and Defendant Doctors Ulit and Mays for failure to provide Plaintiff a wheelchair. However, Plaintiff's allegations are insufficient to give rise to a cognizable claim of deliberate indifference against Defendant McElhaney or any other Defendant. The mere fact that McElhaney requested that Plaintiff fill out and submit a medical request form does not give rise to deliberate indifference. Further, the fact that McElhaney delivered the opinions of the Doctor Doe No. 1 and licensed vocational nurse Thomas does not demonstrate deliberate indifference because there are no allegations that he had the authority to do anything other than what was done. In addition, Plaintiff fails to demonstrate that officers Garcia, Gomez and/or Rogue were deliberately indifferent. The fact that Plaintiff declared "man down" to officer Garcia and he advised Plaintiff to inform McElhaney does not demonstrate deliberate indifference. With regard to officer Gomez, Plaintiff acknowledges that after he declared "man down," Gomez said he would see what he could do. Such actions on the part of Gomez do not demonstrate deliberate indifference.

8

Lastly, with regard to officer Rogue, the mere fact that he mistakenly accused Plaintiff of not declaring "man down" at canteen time does not, alone, demonstrate deliberate indifference. Accordingly, Plaintiff states a cognizable claim of deliberate indifference against licensed vocational nurse Thomas, Doctor Ulit, Doctor Mays, Doctor Doe No. 1 (who was on duty at Corcoran Facility 4B on December 24, 2014, second watch), and CMO Doe No. 2 (who denied authorization for the surgery on or about December 28, 2014).

### D. Declaratory Relief

Plaintiff seeks a declaratory judgment that his rights were violated. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985).

In the event that this action reaches trial and the jury returns a verdict in favor of Plaintiff, that verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that any Defendant violated Plaintiff's rights is unnecessary.

### IV.

### CONCLUSION AND ORDER

For the reasons discussed, the Court finds that Plaintiff has stated a cognizable claim against Defendants licensed vocational nurse Thomas, Doctor Ulit, Doctor Mays, Doctor Doe No. 1 (who was on duty at Corcoran Facility 4B on December 24, 2014, second watch), and CMO Doe No. 2 (who denied authorization for the surgery on or about December 28, 2014) for deliberate indifference in violation of the Eighth Amendment. Plaintiff shall be granted leave to file an amended complaint to cure the deficiencies identified in this order. See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

///

///

The Court will grant Plaintiff an opportunity to cure the identified deficiencies which Plaintiff believes in good faith, are curable. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000). If Plaintiff chooses to amend his complaint, he may not change the nature of this suit by adding new, unrelated claims in his second amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

If Plaintiff does not wish to file an amended complaint and he is agreeable to proceeding only on the cognizable claim identified by the Court, he may file a notice informing the Court that he does not intend to amend and he is willing to proceed only on his claim against Defendants licensed vocational nurse Thomas, Doctor Ulit, Doctor Mays, Doctor Doe No. 1 (who was on duty at Corcoran Facility 4B on December 24, 2014, second watch), and CMO Doe No. 2 (who denied authorization for the surgery on or about December 28, 2014). The Court will then recommend to a district judge that this case only proceed on that claim for the reasons discussed above.

If Plaintiff chooses to file an amended complaint, that complaint should be brief, Fed. R. Civ. P. 8(a), but it must also state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-89. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations admitted).

An amended complaint supersedes all prior complaints. Lacey v. Maricopa County, 693 F.3d 896, 927 (9th Cir. 2012). Absent prior court approval, the amended pleading must be complete in itself without reference to any prior pleading. Local Rule 220. Finally, any amended complaint is limited to 25 pages in length. An amended complaint which exceeds this limit will be stricken.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;
2. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file either:
   a. an amended complaint, limited to 25 pages in length, or
   b. a notice of his intent to proceed upon the cognizable claim identified in this order; and,

///

3. Plaintiff is warned that if he fails to comply with this order, the Court will recommend to the district judge that this action be dismissed for the failure to prosecute and the failure to comply with a court order.

IT IS SO ORDERED.

Dated: **March 25, 2019**

_____
UNITED STATES MAGISTRATE JUDGE